**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| WESTERN WORLD INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NOS.: 1:13-CV-58 (LJA) |
| v. | : | |
| | : | |
| NATHAN LUTZ, SOUTHERN TREE SERVICES, INC., LATANYA NIKKOLE WESTON, as Administratrix of Estate of James Eugene Wilson, deceased, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER

Before the Court is Plaintiff Western World Insurance Company's Motion for Summary Judgment. (Doc. 26.) For the reasons that follow, Plaintiff's Motion is **GRANTED**.

## FACTUAL BACKGROUND[1]

Plaintiff has moved for a declaration regarding its duty under an insurance agreement to defend or indemnify Defendants Nathan Lutz ("Lutz") and Southern Tree Services ("Southern Tree") for any claims arising out of, or connected with, the death of James Wilson.[2]

---

[1] The relevant facts are derived from the Complaint (Doc. 1), Defendants' Answers to the Complaint (Docs. 4, 12-13), Plaintiff's Statement of Undisputed Facts (Doc. 26-2), Defendant Weston's Response to Plaintiff's Statement of Undisputed Facts (Doc. 30), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Defendants as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[2] Local Rule 56 provides that "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." Throughout the Response to Plaintiff's Statement of Material Facts (Doc. 26-2), Defendant Weston purportedly "controverts" Plaintiff's statements, but does not point to anything in the record to support the contravention. (Doc. 30.) Accordingly, those facts asserted by Plaintiff but not specifically controverted by Weston with specific citation to the record are deemed admitted. Of course, Plaintiff still bears the burden to show "that there is no genuine issue as to any material fact," Fed.

## I.     Southern Tree

On December 16, 2010, Lutz incorporated Southern Tree with his friend, Jason Stone, to provide tree removal services. (Doc. 27-2 at 12:15-16, 13:6-8, 15:16-19). Within a few weeks, however, Lutz bought out Stone's interest and became the sole owner and employee of Southern Tree. (*Id.* at 14:12-20.) Southern Tree primarily operated throughout Leesburg and Albany, Georgia, and most of its work was devoted to residential projects. (*Id.* at 19:19-20:7.) Although Lutz was Southern Tree's sole employee, from time to time, Southern Tree would hire additional workers to assist Lutz on various jobs. (Doc. 26-2 at ¶¶ 1-2.) Southern Tree classified these individuals as independent contractors, and issued them an Internal Revenue Service Form 1099. (Doc. 27-2 at 72:14-25, 75:4-77:18.)

Wilson and his friend, Gary Fayson, worked with Southern Tree on a number of occasions prior to the accident. (*Id.* 23:1-26:13.) Wilson did not have an employment contract with Southern Tree, and was paid $9 an hour for his services. (*Id.* at ¶¶ 4, 8; *see also* Doc. 27-2 at 29:3-5.) He did not have any experience or specialized knowledge related to felling trees, and worked mainly as a manual laborer. (Doc. 26-2 at ¶ 5.) His responsibilities primarily consisted of moving and hauling trees as they were cut down by Lutz. (*Id.* at ¶ 6.) Lutz would direct Wilson where to stand and would answer any questions Wilson had. (*Id.* at ¶¶ 12-13.) Wilson was also instructed that if there was a dangerous task, Lutz would be the one to handle it. (*Id.* at ¶ 11.) Lutz expected Wilson "to follow his instructions," (*Id.* at ¶ 14), and he "was free to terminate Wilson's and other laborers' employment if he elected to do so." (*Id.* at ¶ 15.)

## II.     The Insurance Policy

Following its incorporation, Southern Tree purchased a general liability insurance policy from Plaintiff (the "Policy"). (*Id.* at ¶ 30; *see also* Doc. 1-3.) Under the Policy, Plaintiff agreed to "pay those sums that [Southern Tree] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies." (Doc. 1-3 at 28.) Plaintiff further agreed "to defend [Southern Tree] against any 'suit' seeking those damages." (*Id.*) However, the Policy provided that Plaintiff had "no duty to defend

---

R. Civ. P. 56(c), and that its motion is supported by the evidence submitted. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004).

[Southern Tree] against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which [the] insurance does not apply." (*Id.*) Significantly, the Policy excluded from coverage an "employee" of Southern Tree who sustained bodily injury during the course of the employee's employment or while performing duties related to the conduct of Southern Tree. (Doc. 26-2 at ¶ 31; *see also* Doc. 1-3 at 29.)

The Policy defined an "employee" as including a "leased worker," but not a "temporary worker." (Doc. 1-3 at 40.) A "leased worker" was, in turn, defined as "a person leased to [Southern Tree] by a labor leasing firm under an agreement between [Southern Tree] and the labor leasing firm, to perform duties related to the conduct of [Southern Tree's] business." (*Id.* at 41.) The definition of "leased worker" went on to state that a "leased worker" does not include a "temporary worker," which was defined as "a person who is furnished to [Southern Tree] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (*Id.* at 41-42.)

## III.   The Accident

In June 2011, Southern Tree was sub-contracted to assist in a Federal Emergency Management Agency ("FEMA") sponsored cleanup by the Alabama Department of Conservation (the "DRC") in Guntersville State Park, Alabama, following a tornado that had struck the area. (Docs. 26-2 at ¶ 16; 27-2 at 33:15-37:9.) Lutz hired Wilson and Fayson to accompany him on the trip. (Doc. 27-2 at 40:6-41:13.) Lutz drove the Southern Tree bucket truck, and Wilson and Grayson drove the Southern Tree pickup truck. (Doc. 26-2 at ¶ 18.) Southern Tree paid for the gasoline used on the trip, and supplied all of the necessary tools and equipment for the job. (*Id.* at ¶¶ 19-20.) Southern Tree also provided the crew with safety equipment, including safety glasses, hard hats, and earplugs. (Doc. 27-2 at 46:10-15, 79:11-15.) Southern Tree agreed to pay Wilson his normally hourly rate, and Lutz indicated that he would possibly give Grayson and Wilson a bonus depending upon the overall profitability of the job. (*Id.* at 43:7-21.)

The crew began working on June 5, 2011. (Doc. 26-2 at ¶ 17.) According to Lutz, he determined what time the crew would start work. (Doc. 27-2 at 49:13-22.) As in prior jobs, Wilson did not cut down any trees. (*Id.* at 48:6-49:8.) Instead, he worked as a ground laborer,

setting up cones, moving the truck as needed, dragging felled limbs, and completing any other task given to him by Lutz. (*Id.*) Overall, the crew worked as a team, with Lutz as the team leader. (*Id.* at 50:22-52:7, 60:23-61:2, 103:18-104:1.)

On June 6, 2011, the team was cutting down a 35-foot tree that had been damaged by high winds from the tornado. (Doc. 26-2 at ¶ 26.) Lutz first cut a deep notch in the tree to make it fall towards the road. (*Id.*) After his first cut, the tree settled down on a wedge, and Lutz instructed Wilson to retrieve a sledgehammer from the truck. (*Id.*) Upon receiving the sledgehammer, Lutz instructed Wilson to move to an area of safety, explaining that once he hit the wedge, the tree would likely fall. (*Id.*) Although it is not entirely clear exactly how far Lutz instructed Wilson to stand or whether Wilson moved to a place of safety, when Lutz hit the wedge, the tree fell on Wilson. (*Id.*) Wilson subsequently died as a result of the injuries he sustained from the falling tree. (*Id.* at ¶ 27.)

On August 29, 2012, Defendant Latanya Weston, Wilson's sister, was appointed Administratrix of Wilson's Estate ("Weston") by the Probate Court of Dougherty County, Georgia. (*Id.*) On February 13, 2013, Weston filed a civil action in the Circuit Court of Marshall County, Alabama, against Lutz, Southern Tree, and other defendants, alleging various claims of negligence (the "Alabama Action"). (*Id.* at ¶¶ 28-29.)

## PROCEDURAL HISTORY

On April 12, 2014, Plaintiff commenced this action, seeking a declaration that Wilson was an employee of Southern Tree and thus the Policy afforded no coverage for any claims or damages arising out of, or connected with, the Alabama Action. (Doc. 1.) Plaintiff moved for summary judgment on December 18, 2014 (Doc. 26), and Defendant Weston timely responded on January 9, 2015. (Doc. 28.) Defendants Lutz and Southern Tree, however, did not file a response. Plaintiff filed its reply on January 26, 2015. (Doc. 31.) As such, Plaintiff's Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quotation

omitted). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

There is no dispute that the Policy excludes from coverage employees of Southern Tree. Thus, the sole issue to be resolved in this litigation is whether Wilson was an employee of Southern Tree or an independent contractor at the time of the accident.[3]

In Georgia, "[t]he construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1; *see also Brookside Cntys., LLC v. Lake Dow North Corp*, 603 S.E.2d 31, 32 (Ga. Ct. App. 2004) ("Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court."). As noted above, the Policy does not define "employee" beyond stating in its list of definitions that an "employee" includes a "leased worker," but does not include a "temporary worker." The Parties do not assert that Wilson was either a "leased worker" or a "temporary worker." Instead, they contest whether Wilson was an employee. As explained below, the Court finds that Wilson was an employee of Southern Tree at the time of the accident.

As a threshold matter, Weston admitted in her Answer to the Complaint that Wilson was an employee of Southern Tree. (*See* Docs. 1 at ¶¶ 12, 24; 4 at ¶¶ 12, 24.) "[T]he general

---

[3] The Parties appear to agree that this issue is governed by Georgia law. *See Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014) ("A federal court sitting in a diversity action applies state law using the choice of law rules of the forum state, in this case Georgia."); *see generally Farm Credit of Nw. Florida, ACA v. Easom Peanut Co.*, 718 S.E.2d 590, 600 (Ga. Ct. App. 2011) ("[F]or contract actions, [Georgia courts] apply the *lex loci contractus* rule, which provides that when a contract is made and to be performed in one state, its validity, nature, construction, and interpretation are governed by the substantive law of that state.").

rule [is] that a party is bound by the admissions in his pleadings." *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).

Furthermore, "[i]n considering whether a worker [is] an employee or independent contractor for purposes of determining the coverage of an insurance policy, . . . [Georgia courts] have looked to whether the employer has assumed the right to control the time, manner, and method of executing the work." *Boatright v. Old Dominion Ins. Co.*, 695 S.E.2d 408, 410 (Ga. Ct. App. 2010) (collecting cases). If so, the worker is deemed an employee. An employer has the "right to control the time" where it "has assumed the right to control the person's actual hours of work." *Id.* Similarly, an employer has the "right to control the manner and method" where it "has assumed the right to tell the person how to perform all details of the job, including the tools he should use and the procedures he should follow." *Id.*

Based on the undisputed evidence in the record, Southern Tree exercised control over the time, the manner, the methods, and the means of Wilson's work at the time of the accident. Wilson was not free to control the time he would begin work or how many hours he would work. Although Southern Tree was sub-contracted on the job, Lutz determined when the crew would start work and when they would stop for the day as the crew rode to and from the job together in Southern Trees' trucks. (Doc. 27-2 at 49:17-50:21.) Lutz also decided what procedures the crew would follow to complete the job. For instance, Lutz would instruct Wilson to set up cones or move the truck as needed. In fact, at the time of the accident, Lutz instructed Wilson to retrieve a sledgehammer and advised him to move to an area of safety as Lutz cut down the tree. Lutz also required Wilson to attend a safety meeting at the beginning of the job, restricted Wilson from felling trees, and limited Wilson's duties to simply providing ground labor. Wilson was specifically instructed "that if there was a dangerous task to be done, Lutz would be the one doing the dangerous task." (Doc. 26-2 at ¶ 11.) Furthermore, Southern Tree provided all the necessary tools and equipment to complete the job, including the trucks, chainsaws, cutting wedge, cones, sledgehammer, hard

hats, and earplugs.[4] For all practical purposes, Lutz directed Wilson's work and made all of the significant decisions involving the crew.

In addition to actually controlling Wilson's work, Southern Tree retained the right to control his work. Georgia courts have held that it is not the employer's actual exercise of control that determines whether an employment relationship exists but rather the *right* to control which governs. *See Wieland v. Georgia Farm Bureau Mut. Ins. Co.*, 486 S.E.2d 694, 696 (Ga. Ct. App. 1997) ("One is an employee if the employer retains the right to control the manner, method and means of performance, even if the employer does not exercise that right."); *Southern Gen. Ins. Co. v. Boerste*, 394 S.E.2d 566, 569 (Ga. Ct. App. 1990) ("The test is not whether the employer *did in fact* control and direct the employee in the work, but it is whether the employer had that right under the employment contract..") (emphasis in original). "The key in making this determination is whether the contractor is truly independent or whether he is simply the employer's alter ego." *Whatley v. Sharma*, 661 S.E.2d 590, 592 (Ga. Ct. App. 2008) (citation omitted). The existence of a right of control "is inferred where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a set price." *Wieland*, 486 S.E.2d at 696.

It is undisputed that Wilson did not have a written contract to perform a certain piece of work for a specific price at the time of the accident. Rather, Wilson was to be paid his normal hourly rate of $9, with the possibility of a bonus.[5] In other words, his pay was directly tied to the amount of work he performed, not to some set price for a finished job. In addition, Wilson did not have his own company, did not set his own hours, did not define

---

[4] Although Weston contends that Wilson told her prior to the accident that "he had a hard hat and some glasses," (Doc. 28 at 8-9), Weston has pointed to nothing in the record to evidence that he was using his own hard hat and glasses at the time of the accident. Furthermore, Weston's statement of what Wilson told her constitutes inadmissible hearsay that cannot be reduced to admissible form, and thus cannot properly be considered on a motion for summary judgment. *See Muhammad v. Sapp*, 494 F. App'x 953, 957 (11th Cir. 2012) (noting that "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999))).

[5] Contrary to Weston's assertions, the record is clear that Lutz agreed to pay Wilson his hourly rate, with the possibility of a bonus if the crew did well. (*See* Doc. 27-2 at 43:7-21.) That Southern Tree subsequently paid Wilson's family Wilson's hourly wage and "a lit bit extra" to help compensate for the accident does not transform Wilson into an independent contractor. (*Id.* at 67:21-68:5.)

his duties, and did not dictate the tools to be used or the work to be done. Instead, he simply followed the instructions he was given by Lutz. As Lutz repeatedly testified, the crew worked as a "team," with him as the team leader. "That [Wilson] might also have taken instruction from the [DRC] does not preclude a finding that he was an employee of [Southern Tree]." *Boatright*, 695 S.E.2d at 411. In fact, if Wilson refused to follow Lutz's instructions, "Lutz was free to terminate Wilson's . . . employment." (Doc. 26-2 at ¶ 15); *see generally Booth v. Essex Ins. Co.*, 498 S.E.2d 528, 530 (Ga. Ct. App. 1997) (noting that in defining the employment relationship, courts should consider "whether the master has the right to discharge the servant"). Under these circumstances, Wilson was simply an alter ego of Southern Tree and, therefore, an employee of the company. *See Boatright*, 695 S.E.2d at 411-12 (finding that the evidence demonstrated that the worker was an employee rather than an independent contractor for purposes of insurance policy exclusion where worker did not operate his own business and employer (i) hired worker to assist in building houses; (ii) paid him weekly; (iii) provided the necessary tools and materials; (iv) instructed him on how to perform the work requested by employer and in the manner desired by employer; and (v) retained the authority to discharge worker).

In support of her position that Wilson was an independent contractor, Weston points to the temporal nature of Wilson's employment, the fact that Southern Tree considered him an independent contractor and issued him an IRS Form 1099, and the lack of skill required to perform the job. Weston's claims are unavailing. First, the Georgia Court of Appeal has held that "under well-established principles governing the construction of insurance policies, the clause excluding coverage for 'any employee,' . . . should not be distinguished on the basis of 'whether the employment be regular and continuous or incidental and temporary.'" *Boerste*, 394 S.E.2d at 569 (citation omitted). Second, "the fact that [Southern Tree] issued its workers Internal Revenue Service Form 1099 (rather than Form W-2), considered them to be 'self-employees,' and did not withhold taxes from their paychecks or provide insurance for the workers does not create a jury question on [Wilson's] status as an employee." *Boatright*, 695 S.E.2d at 411-12. Lastly, the fact that Wilson was an unskilled labor supports a finding that he was an employee, rather than an independent contractor. *See* Restatement

(Second) of Agency § 220 cmt. i (1958) ("Unskilled labor is usually performed by those customarily regarded as servants, and a laborer is almost always a servant in spite of the fact that he may nominally contract to do a specified job for a specified price.").[6] Accordingly, the Court finds that Wilson was an employee of Southern Tree at the time of the accident. As such, the Policy provides no coverage for the claims and damages arising out of the Alabama Action.

## **CONCLUSION**

In light of the forgoing, Plaintiff's Motion for Summary Judgment (Doc. 26) is **GRANTED**. Accordingly, Plaintiff owes no duty to defend or indemnify for any of the claims arising out of, or connected with, the Alabama Action, and **JUDGMENT** shall be entered in favor of Plaintiff.

**SO ORDERED**, this 30th day of September, 2015.


_____/s/ Leslie J. Abrams_____
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[6] Georgia courts have endorsed the Restatement (Second) of Agency in defining the employment relationship. *See, e.g., Moss v. Cent. of Georgia R. Co.*, 219 S.E.2d 593, 597 (Ga. Ct. App. 1975).